1  H. Grant Law (SBN:144505)
   hlaw@shb.com
2  Amir Nassihi (SBN: 235936)
   anassihi@shb.com
3  Mia Solvesson (SBN: 246291)
   msolvesson@shb.com
4  SHOOK, HARDY & BACON L.L.P.
   333 Bush Street, Suite 600
5  San Francisco, California 94104-2828
   Telephone:    (415) 544.-900
6  Facsimile:    (415) 391-0281

7

8  Attorneys for Defendant
   FORD MOTOR COMPANY

9            UNITED STATES DISTRICT COURT

10          NORTHERN DISTRICT OF CALIFORNIA

11            SAN FRANCISCO DIVISION

12 | ROBERTO O. LOZANO, DANIEL GERARD, | Case No.  CV 08 3244 MEJ
13 | RAMON RODRIGUEZ, QU PING, AND |
   | NANCY KIGER, individually and on behalf of | **DEFENDANT FORD MOTOR**
14 | all others similarly situated, | **COMPANY'S NOTICE OF FILING OF**
   | | **MDL NOTICE OF RELATED ACTION**
15 |                  Plaintiffs, |
   | | Complaint Filed:  July 3, 2008
16 |           vs. |

17 | FORD MOTOR COMPANY, |

18 |                  Defendant. |

19

20        **NOTICE OF FILING OF MDL NOTICE OF RELATED ACTION**

21        Defendant Ford Motor Company ("Ford") hereby notifies this Court that on August 8, 2008,

22 it filed its Forty-Fourth Notice of Related Action with the Judicial Panel on Multidistrict Litigation

23 (the "MDL Panel") alerting the MDL Panel that the above-captioned case contains allegations

24 similar to those included in actions that the Panel has transferred to the United States District Court

25 for the Eastern District of Michigan for coordinated pre-trial proceedings pursuant to 28 U.S.C. §

26 1407.  Ford's Notice of Related Action was filed in MDL docket number 1718, *In re Ford Motor*

27 *Company Speed Control Deactivation Switch Products Liability Litigation*.

28

1    A copy of the Notice of Related Action filed with the MDL Panel is attached as Exhibit 1

2  hereto.

3

4

5  Date:  August 8, 2008                          Respectfully submitted,

6                                                 SHOOK, HARDY & BACON L.L.P.

7                                                 By:_____/s/ Mia O. Solvesson_____

8                                                     H. GRANT LAW
                                                     AMIR NASSIHI

9                                                     MIA O. SOLVESSON
                                                     Attorneys for Defendant

10                                                    FORD MOTOR COMPANY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

144016v1

**EXHIBIT 1**



RECEIVED
CLERK'S OFFICE

2008 AUG -8 A 9:11

JUDICIAL PANEL
MULTIDISTRICT
LITIGATION

Dykema Gossett PLLC
Franklin Square, Third Floor West
1300 I Street N.W.
Washington, DC 20005

WWW.DYKEMA.COM
Tel: (202) 906-8600
Fax: (202) 906-8669

**William M. Jack**
Direct Dial: (202) 906-8703
Email: WJACK@DYKEMA.COM

**VIA HAND DELIVERY**

August 8, 2008

Mr. Jeffrey N. Lüthi
Clerk of the Panel
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E., Room G-255, North Lobby
Washington, DC  20002-8004

Re:    *In re Ford Motor Co. Speed Control Deactivation Switch Products Liability Litigation*
       *MDL Docket No. 1718*
       *Ford Motor Company's Forty-Fourth Notice of Related Action*

Dear Clerk of the Panel:

Pursuant to Rule 7.5(e) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, enclosed please find the original and one copy of Ford Motor Company's Forty-Fourth Notice of Related Action in the above-referenced MDL Docket No. 1718.  Please return to me a time-stamped copy in the enclosed return envelope.

Please contact me with any questions.

Sincerely,

DYKEMA GOSSETT PLLC

William M. Jack

Enclosures

cc:    Counsel Identified on Certificate of Service

California | Illinois | Michigan | Texas | Washington D.C.



# BEFORE THE JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re FORD MOTOR CO. SPEED CONTROL DEACTIVATION SWITCH PRODUCTS LIABILITY LITIGATION | ) ) ) ) )    **MDL DOCKET NO. 1718** |

## FORD MOTOR COMPANY'S FORTY-FOURTH NOTICE OF RELATED ACTION

Pursuant to Rule 7.5(e) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Ford Motor Company ("Ford") hereby notifies the Panel of the pendency of one potential tag-along action. The action is listed in the attached Schedule of Related Action, and copies of the complaint and district court docket sheet are attached as Exhibit A. This action involves allegations that Ford vehicles contain a defective speed control deactivation switch.

DATED:      August 8, 2008                Respectfully submitted,


By: _____
Andrew J. McGuinness (P42074)
(amcguinness@dykema.com)
Thomas M. Hanson (P62675)
(thanson@dykema.com)
Jeffrey R. Miller (P69839)
(jmiller@dykema.com)
William M. Jack
(wjack@dykema.com)
Dykema Gossett PLLC
2723 South State Street, Suite 400
Ann Arbor, Michigan  48104
Telephone:    (734) 214-7660
Facsimile:    (734) 214-7696

*Attorneys for Defendant Ford Motor Co.*

## <u>SCHEDULE OF RELATED ACTIONS</u>

| <u>Complete Case Name</u> | District<br>Where<br><u>Pending</u> | <u>Civil Action No.</u> | <u>Judge Assigned</u> |
| --- | --- | --- | --- |
| Roberto O. Lozano, Daniel Gerard, Ramon Rodriguez, Qu Ping, and Nancy Kiger, individually and on behalf of all others similarly situated v. Ford Motor Company | N.D. Cal. | 3:08-cv-03244 | Magistrate Judge Maria-Elena James |

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2008 a true and correct copy of the foregoing Ford Motor Company's Forty-Fourth Notice of Related Action was electronically filed with the following federal district court in which the action that will be affected by the Notice is pending:

United States District Court for the
Northern District of California
San Francisco Division
450 Golden Gate Ave.
San Francisco, CA 94102

I hereby also certify that on August 8, 2008 a true and correct copy of the foregoing Ford Motor Company's Forty-Fourth Notice of Related Action was served by First-Class Mail upon the following counsel of record for the action that will be affected by the Notice:

Barry J. Goodman
Goodman Acker, P.C.
17000 West Ten Mile Road
2nd Floor
Southfield, MI 48075
Telephone:      (248) 483-5000
Facsimile:      (248) 483-3131

Michael A. Caddell
Cynthia B. Chapman
Cory S Fein
Caddell & Chapman
1331 Lamar, Suite 1070
Houston, TX 77010
Telephone:      (713) 751-0400
Facsimile:      (713) 751-0906

Jeffrey J. Lowe
The Lowe Law Firm
8235 Forsyth Blvd, Suite 1100
St. Louis, MO 63105-1623
Telephone:      (877) 678-3400
Facsimile:      (314) 678-3400

Michael J. Flannery
Carey & Danis, LLC
8235 Forsyth Boulevard, Suite 1100
St. Louis, MO 63105
Telephone:      (314) 725-7700
Facsimile:      (314) 721-0905

Amir M Nassihi
Shook, Hardy & Bacon
333 Bush Street, Suite 600
San Francisco, CA 94104
Telephone:      (415) 608-1365
Facsimile:      (415) 391-0281

William M. Jack
*Attorney for Ford Motor Company*

4

# EXHIBIT A

ADRMOP, E-Filing

**U.S. District Court**
**California Northern District (San Francisco)**
**CIVIL DOCKET FOR CASE #: 3:08-cv-03244-MEJ**

Lozano et al v. Ford Motor Company
Assigned to: Magistrate Judge Maria-Elena James
Cause: 28:1332 Diversity-Personal Injury

Date Filed: 07/03/2008
Jury Demand: Both
Nature of Suit: 355 Motor Vehicle Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**Roberto O. Lozano**
*individually and on behalf of all others*
*similarly situated*

represented by **Cory S Fein**
Caddell & Chapman
1331 Lamar
Suite 1070
Houston , TX 77010
713-751-0400
Fax: 713-751-0906
Email: csf@caddellchapman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cynthia B. Chapman**
Caddell & Chapman
1331 Lamar
Suite 1070
Houston , TX 77010
713-751-0400
Fax: 713-751-0906
Email: cbc@caddellchapman.com
*ATTORNEY TO BE NOTICED*

**Jeffrey J. Lowe**
The Lowe Law Firm
8235 Forsyth Blvd, Suite 1100
St. Louis , MO 63105-1623
877-678-3400
Fax: 314-678-3400
Email: jeff@jefflowepc.com
*ATTORNEY TO BE NOTICED*

**Michael A. Caddell**
Caddell & Chapman
1331 Lamar
Suite 1070
Houston , TX 77010
713-751-0400
Email: mac@caddellchapman.com
*ATTORNEY TO BE NOTICED*

**Michael J. Flannery**
Carey & Danis, LLC
8235 Forsyth Boulevard
Suite 1100
St. Louis , MO 63105
314-725-7700
Fax: 314-721-0905
Email: mflannery@careydanis.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Daniel Gerard**                          represented by  **Cory S Fein**
*individually and on behalf of all others*                (See above for address)
*similarly situated*                                       *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Cynthia B. Chapman**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Jeffrey J. Lowe**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Michael A. Caddell**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Michael J. Flannery**
                                                           (See above for address)
                                                           *PRO HAC VICE*
                                                           *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ramon Rodriguez**                        represented by  **Cory S Fein**
*individually and on behalf of all others*                (See above for address)
*similarly situated*                                       *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Cynthia B. Chapman**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Jeffrey J. Lowe**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Michael A. Caddell**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Michael J. Flannery**
                                                           (See above for address)
                                                           *PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Qu Ping**                                    represented by    **Cory S Fein**
*individually and on behalf of all others*                     (See above for address)
*similarly situated*                                           *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Cynthia B. Chapman**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Jeffrey J. Lowe**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Michael A. Caddell**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Michael J. Flannery**
                                                               (See above for address)
                                                               *PRO HAC VICE*
                                                               *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Nancy Kiger**                                represented by    **Cory S Fein**
*individually and on behalf of all others*                     (See above for address)
*similarly situated*                                           *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Cynthia B. Chapman**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Jeffrey J. Lowe**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Michael A. Caddell**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Michael J. Flannery**
                                                               (See above for address)
                                                               *PRO HAC VICE*
                                                               *ATTORNEY TO BE NOTICED*

V.

<u>**Defendant**</u>

**Ford Motor Company**                         represented by    **Amir M Nassihi**
                                                               Shook, Hardy & Bacon
                                                               333 Bush Street
                                                               Suite 600

San Francisco , CA 94104
415-608-1365
Fax: 415-391-0281
Email: anassihi@shb.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/03/2008 | 1 | COMPLAINT; summons issued against Ford Motor Company (Filing fee $ 350, receipt number 34611020912). Filed by Ramon Rodriguez, Qu Ping, Roberto O. Lozano, Nancy Kiger, Daniel Gerard. (slh, COURT STAFF) (Filed on 7/3/2008) (Entered: 07/08/2008) |
| 07/03/2008 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 10/2/2008. Case Management Conference set for 10/9/2008 10:00 AM. (Attachments: # 1 Standing Order)(slh, COURT STAFF) (Filed on 7/3/2008) (Entered: 07/08/2008) |
| 07/03/2008 | | CASE DESIGNATED for Electronic Filing. (slh, COURT STAFF) (Filed on 7/3/2008) (Entered: 07/08/2008) |
| 07/31/2008 | 3 | CERTIFICATE OF SERVICE by Ramon Rodriguez, Qu Ping, Roberto O. Lozano, Nancy Kiger, Daniel Gerard re 1 Complaint *Proof Of Service - Civil Action Summons* (Chapman, Cynthia) (Filed on 7/31/2008) (Entered: 07/31/2008) |
| 08/07/2008 | 4 | *Defendant's* ANSWER to Complaint with Jury Demand byFord Motor Company. (Nassihi, Amir) (Filed on 8/7/2008) (Entered: 08/07/2008) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/07/2008 14:46:50 | | |
| **PACER Login:** dg0242 | **Client Code:** | 098084-0002 |
| **Description:** Docket Report | **Search Criteria:** | 3:08-cv-03244-MEJ |
| **Billable Pages:** 4 | **Cost:** | 0.32 |

MICHAEL A. CADDELL (State Bar No. 249469)
    mac@caddellchapman.com
CYNTHIA B. CHAPMAN (State Bar No. 164471)
    cbc@caddellchapman.com
CORY S. FEIN (State Bar No. 250758)
    csf@caddellchapman.com
CADDELL & CHAPMAN
1331 Lamar, Suite 1070
Houston, TX 77010
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

Attorneys for Plaintiffs

(Additional Counsel Appearing on Signature Page)

**FILED**

JUL - 3 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

**MEJ**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

**CV 08 3244**

| | |
|---|---|
| **ROBERTO O. LOZANO, DANIEL GERARD, RAMÓN RODRIGUEZ, QU PING, AND NANCY KIGER,** individually and on behalf of all others similarly situated,<br><br>              **Plaintiffs,**<br>v.<br>**FORD MOTOR COMPANY,**<br><br>              **Defendant.** | Case No.<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br>**(1) UNFAIR COMPETITION LAW;**<br>**(2) CONSUMER LEGAL REMEDIES ACT;**<br>**(3) UNJUST ENRICHMENT**<br>**(4) STRICT LIABILITY; and**<br>**(5) NEGLIGENCE**<br><br>**DEMAND FOR JURY TRIAL** |

ORICINAL CLAS ACTION COMPLAINT

Page - 1 -

NOW COME Roberto O. Lozano, Daniel Gerard, Ramón Rodriguez, Qu Ping, and Nancy Kiger ("Plaintiffs"), on behalf of themselves and all others similarly situated, and respectfully file this Original Class Action complaint against Ford Motor Company ("Ford") and allege as follows:

## I. INTRODUCTION

1.    Plaintiffs Roberto O. Lozano, Daniel Gerard, Ramón Rodriguez, Qu Ping, and Nancy Kiger, on behalf of themselves and other California consumers similarly situated, hereby allege upon personal knowledge and belief as to their own acts and upon information and belief (based on investigation of their counsel) as to all other matters, the following, concerning the defective design and manufacture of a speed control deactivation switch ("SCD Switch") and/or associated circuitry that is found in several model-year Ford vehicles, including the model-year Ford vehicles owned by Plaintiffs, themselves. Plaintiffs believe substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery to show as follows:

2.    Defendant Ford Motor Company ("Ford"), under pressure from NHTSA, issued multiple separate recalls between May 1999 and August 2007.

3.    Each time Defendant Ford announced a recall, Defendant Ford made assurances that the recall encompassed all dangerous models. These assurances were proven to be inaccurate each time the recall was expanded.

4.    Defendant Ford knew from the beginning how many of its models were equipped with the defective switch. However, rather than being honest with its customers and recalling all model year vehicles with a defective switch from the start, Defendant Ford repeatedly misrepresented how widespread the defect was. Defendant Ford had to be repeatedly forced, both by pressure from NHTSA and its customers whose vehicles and homes had caught fire, to expand its recall multiple times.

5.    Plaintiffs who suffered a fire are referred to herein as "Incident Plaintiffs." Plaintiff who did not suffer a fire, but was deprived of the use of her vehicle's cruise control function, is referred to herein as "Loss-of-Use Plaintiff".

## II. PLAINTIFFS

### A.    ROBERTO O. LOZANO

6.    Plaintiff Roberto O. Lozano is an "Incident Plaintiff" and his experience is typical of the "Incident Sub-Class."

7.    Plaintiff Lozano is a California citizen residing in the city of Lakeport, in Lake County, California.

8.    On October 22, 2004, Plaintiff Lozano purchased a Model Year 1999 Ford F-150 from Ukiah Ford Lincoln Mercury in Ukiah, California.

9.    On May 3, 2008, Plaintiff Lozano's Ford F-150 was parked approximately 18 feet away from his house, next to his carport. It had been parked there for approximately 20 hours.

10.    At approximately 2:00 p.m., Plaintiff Lozano and his family were returning home from a picnic. Upon their arrival home, they found the Ford F-150 in flames.

11.    While Plaintiff Lozano attempted to extinguish the fire with a garden hose, he contacted 911 to report the fire.

12.    As a result, Plaintiff Lozano sustained smoke inhalation damage to his lungs.

13.    Upon the arrival of the fire department to the scene, the fire was still smoldering.

14.    In addition to the personal injuries, and total and complete damage to the F-150 itself, Plaintiff Lozano sustained damages to his driveway, carport, cellular telephone, and laminate flooring of his house as a result of the fire.

15.    As a result of the fire, Plaintiff Lozano incurred transportation costs and suffered from loss of the use of his Ford F-150.

16.    Plaintiff Lozano never received a recall notice from Defendant Ford and, in fact, was unaware of the defect until after the fire.

17.    In June of 2008, Plaintiff Lozano, through counsel, informed Defendant Ford of the fire and that he believes the cause of the fire was due to the defective nature of the vehicle manufactured by Defendant Ford.

**B.    DANIEL GERARD**

18.    Plaintiff Daniel Gerard is an "Incident Plaintiff" and his experience is typical of the "Incident Sub-Class."

19.    Plaintiff Daniel Gerard is a California citizen residing in the city of Sacramento.

20.    At all relevant times, Plaintiff Gerard owned a 2000 Ford F-150.

21.    On March 7, 2007, Plaintiff Gerard's Ford F-150 caught fire in his father's driveway after having been parked with the ignition off for approximately five hours.

22.    Plaintiff Gerard never received notice that Defendant Ford had issued a product recall and was unaware of this recall until a fireman responding to the March 7, 2007 fire so informed him.

23.    The fire damaged not only Plaintiff Gerard's vehicle, but also the front molding of the Gerard family home, in front of which Plaintiff Gerard's vehicle was parked at the time of the fire.

24.    Additionally, the fire completely destroyed Plaintiff Gerard's SIRIUS Satellite Radio Receiver and several compact discs located within the vehicle.

25.    Plaintiff Gerard contacted the Ford Customer Relationship Center on April 05, 2007 regarding the fire in his 2000 F-Series Truck.   Ford responded by email, asking for additional information.

26.    Plaintiff Gerard complied with all requests made by Defendant Ford and, in response, Defendant Ford refused to help Plaintiff Gerard in any way.

**C.    PLAINTIFF RAMÓN RODRIGUEZ**

27.    Plaintiff Ramón Rodriguez is an "Incident Plaintiff" and his experience is typical of the "Incident Sub-Class."

28.    Plaintiff Rodriguez is a California citizen residing in the city of Escondido.

29.    At all relevant times, Plaintiff Rodriguez owned a Model Year 2001 Ford F 150.

30.    In the early morning of August 5, 2007, Plaintiff Rodriguez' 2001 Ford F 150 caught fire in the driveway of his home.

31.    Plaintiff Rodriguez' Ford F 150 was completely destroyed.

32.    In addition to the destruction of the vehicle, the fire caused damage to Plaintiff Rodriguez' parking structure and driveway.

33.    Plaintiff Rodriguez never received a recall notice from Ford and, in fact, was unaware of the defect until after the fire.

34.    Plaintiff Rodriguez immediately notified the Ford Consumer Affairs Department of the incident by both phone and U.S. mail.  Plaintiff Rodriguez submitted to Defendant Ford the information and documentation requested by Carmen Simonds" of the Ford Consumer Affairs Department.

35.    In response, Defendant Ford sent a letter to Plaintiff Rodriguez' family that the origin of the fire could not be determined.

36.    Defendant Ford refused to help Plaintiff Rodriguez in any way.

37.    As a result of the fire, Plaintiff Rodriguez was forced to rent a vehicle for three months until he could afford a replacement.

**D.    PLAINTIFF QU PING**

38.    Plaintiff Qu Ping is an "Incident Plaintiff" and her experience is typical of the "Incident Sub-Class."

39.    Plaintiff Ping is a California citizen residing in the city of Fallbrook.

40.    In October 1999, Plaintiff Ping purchased a Model Year 2000 Ford F 150.

41.    At approximately 1:00 a.m. on October 14, 2006, Plaintiff Ping's Ford F 150 caught fire in the driveway of her home in Fallbrook.

42.    Plaintiff Ping called emergency services while her husband attempted to extinguish the fire with a garden hose.

43.    Despite the efforts of the North County Fire Protection District to extinguish the fire, Plaintiff Ping's Ford F 150 and contents therein were completely destroyed.

44.    In addition to the damage to the F-150 itself, the fire caused damage to Plaintiff Ping's driveway, laptop computer, prescription medication, jacket, three garage door openers, flashlight, emergency equipment, and bank records.

45.    Plaintiff Ping never received a recall notice from Defendant Ford and, in fact, was unaware of the defect until after the fire.

46.    On October 4, 2007, Plaintiff Ping notified Defendant Ford of the fire by way of letter.

47.    In a letter dated October 27, 2007, Defendant Ford communicated to Plaintiff Qu Ping that it was denying responsibility for her claim.

48.    As a result of the fire, Plaintiff Ping incurred transportation costs and suffered from loss of the use of her Ford F 150 and the SCD Switch therein.

**E.    NANCY KIGER**

49.    Plaintiff Nancy Kiger is a "Loss-of-Use Plaintiff" and her experience is typical of the "Loss-Of-Use Sub-Class."

50.    Plaintiff Kiger is California citizen, residing in the city of Red Bluff.    At all relevant times she owned a 1999 model Ford Explorer.

51.    One feature that was important to her in her decision to purchase the Explorer was the presence of cruise control.  Before she decided to purchase the vehicle she examined it and verified that it had cruise control, which was evident by the instrumentation inside the vehicle.

52.    In August 2007, Plaintiff Kiger received a notice from Defendant Ford informing her that certain 1992 – 2004 vehicles, including her Explorer, suffered a defect relating to motor vehicle safety.  The letter disclosed the risk of an underhood fire caused by the SCD Switch, and

ORICINAL CLAS ACTION COMPLAINT

advised her to contact her dealer without delay and request a service date to have the fused wiring harness installed. The letter instructed Plaintiff Kiger to contact her dealership to request a service date for the installation of a fused wiring harness.

53.    As instructed, Kiger immediately brought the August 2007 recall notice, along with her vehicle, to a Ford dealership.

54.    When she brought her vehicle to the Ford dealership, the Ford dealership informed her that Ford had not yet provided it with a replacement switch and that her cruise control would have to be deactivated until a replacement switch was available.

55.    Kiger's cruise control was deactivated and she was told that she would be informed when a replacement switch was available.

56.    Kiger contacted her local Ford dealership to inquire about the replacement switch multiple times and each time she was told that the new parts were still not available.

57.    Finally, on May 20, 2008, Kiger got a letter from Ford informing her that the replacement switch was available. On May 23, 2008, she had the replacement switch installed.

58.    Kiger has been damaged as a result of the loss of use of her cruise control function for approximately nine months.

### III. DEFENDANT

59.    Defendant Ford is a corporate entity authorized to conduct business in the State of California.

60.    Defendant Ford's principal place of business is One American Road, Dearborn, Michigan, 48126.

61.    Defendant Ford is engaged in the business of manufacturing, assembling, distributing, and selling motor vehicles, including all of the motor vehicles at issue in this litigation (hereinafter, "Ford Vehicles") in California and throughout the United States. (The term "Ford Vehicles" refers to the models listed herein as the First, Second, Third, Fourth, Fifth, and Sixth Recall Ford Vehicles.)

ORICINAL CLAS ACTION COMPLAINT

### IV.    JURISDICTION AND VENUE

62.    This Court has subject matter jurisdiction over this class action under the Class Action Fairness Act ("CAFA"), because there are more than one-hundred putative class members, the plaintiffs are citizens of California while Ford is a citizen of Michigan, and the aggregate of putative class members' claims is more than $5 million. 28 U.S.C. § 1332(d).

63.    Defendant Ford's public filings demonstrate that millions of its customers have been affected by the defective SCD Switch, and not all of these people reside in Michigan, the state of Defendant Ford's citizenship. Accordingly, the diversity element of CAFA is satisfied. Because the aggregate damages for this class of California citizens easily exceed $5 million, CAFA's amount in controversy is also satisfied.

64.    This Court has personal jurisdiction over Defendant because Ford regularly and continuously does business in the State of California and because Plaintiffs' vehicles were purchased in California.

65.    Venue is proper in this Court because Plaintiff Lozano resides in Lake County in the Northern District of California.

### V.    COMMON ALLEGATIONS

#### A.    NATURE OF THE DEFECT

66.    The Ford Vehicles in question are defective and unsafe for one or more of the following common reasons or a combination thereof:

    a.  The SCD Switch is located in a circuit that is always energized with electricity, even when the Ford Vehicle is parked and the ignition is turned off;

    b.  The circuitry for the SCD Switch does not contain a fused wiring harness that will interrupt the power to the switch if it starts to overheat because of a resistive short to ground;

    c.  The SCD Switch has two compartments: (1) the hydraulic compartment which contains brake fluid which is hygroscopic (i.e., will absorb water from humidity in the air), and (2) the electrical compartment which

contains the always energized electrical components. These compartments are separated by a film membrane that is degraded by water in the brake fluid from humidity in the air, thereby resulting in leakage from the hydraulic compartment into the electrical compartment. This leakage causes corrosion of the switch contacts, resulting in a resistive short to ground which generates heat, thereby melting the plastic base of the switch;

d. Vacuum pressure generated by the Ford Vehicle's brake system causes the Kapton orientation to invert or "oil can" and ultimately fatigue and wear out much sooner than if the diaphragm had only experienced pressure applications in one direction; and

e. The SCD Switch, which is typically mounted on the brake proportioning valve, is mounted in the master cylinder in a vertically up or angled down orientation, such that the metallic corrosion products can settle in such a way that dendrite growth can develop. As dendrites grow and accumulate, their electrical resistance drops and their current carrying capacity increases, causing temperatures to raise high enough to produce an open flame.

67.    The SCD Switch, located in a circuit that is powered at all times regardless of whether the vehicle's ignition is in the "on" position, creates a significant fire risk not only to the Ford Vehicles, but also to the contents of the Ford Vehicles; the structures in which the Ford Vehicles are parked; any adjacent houses, buildings, or other structures; and the property and persons in those adjacent structures.

68.    Prior to the manufacturing of the Ford Vehicles, Defendant Ford knew there were problems with the design, manufacture, and placement of the SCD Switch used in the Ford Vehicles. Nevertheless, Defendant Ford used the same or similar design in the Ford Vehicles that are the subject of this lawsuit.

69.    At least 65 fires reported to the National Highway Traffic Safety Administration ("NHTSA") by June 22, 2005, were confirmed by NHTSA to have been caused by the failure of the SCD Switch and/or its associated circuitry in Ford Vehicles manufactured and placed into the stream of commerce by Ford.

ORICINAL CLAS ACTION COMPLAINT

**B.     THE FIRST RECALL, MAY 1999**

70.     On May 13, 1999, because of the aforesaid fire problems with the SCD Switch, Defendant Ford voluntarily recalled over 250,000 Ford Vehicles.

71.     To Plaintiffs' knowledge, information, and belief, the 1999 recall consisted of replacing the defective switch with an essentially identical switch without adding a fused wiring harness or otherwise modifying the switch and/or the associated circuitry.

72.     This 1999 recall affected the following Ford Vehicles (hereinafter collectively referred to as the "First Recall Ford Vehicles"):

   a.   Model Years 1992 and 1993 Ford Crown Victorias;

   b.   Model Years 1992 and 1993 Lincoln Town Cars; and

   c.   Model Years 1992 and 1993 Mercury Grand Marquises.

**C.     THE SECOND RECALL, JANUARY 2005**

73.     On January 27, 2005, because of the aforesaid fire problems with the SCD Switch and/or associated circuitry, Defendant Ford voluntarily recalled approximately 740,451 additional vehicles.

74.     The January 2005 recall consisted of adding a fused wiring harness to the circuit, and, as part of this recall, Defendant Ford instructed owners to take their Ford Vehicles to a dealership where the cruise control function would be disabled to avoid fires.

75.     This January 2005 recall affected the following vehicles (hereinafter collectively referred to as the "Second Recall Ford Vehicles"):

   a.   Model Year 2000 Ford F-150 Pick-Ups;

   b.   Model Year 2000 Ford Expeditions;

   c.   Model Year 2000 Lincoln Navigators; and

   d.   Model Year 2001 Ford F-Series Super Cab Trucks.

76. In February of 2005, letters were mailed to Second Recall Ford Vehicle owners, alerting them of an interim repair scheme until parts became available in April or May of 2005.

77. On May 4, 2005, Second Recall Ford Vehicle owners were notified by mail that the parts had become available and that they should schedule an appointment for repair as soon as possible.

78. Plaintiff Gerard owned one of the Second Recall Ford Vehicles, a Model Year 2000 Ford F-150 truck, yet he did not receive notice of the recall.

79. Similarly, Plaintiff Rodriguez owned one of the Second Recall Ford Vehicles, a Model Year 2001 Ford F-150 truck, yet he did not receive notice of the recall.

**D. THE THIRD RECALL, SEPTEMBER 2005**

80. On September 7, 2005, because of the aforesaid fire problems with the SCD Switch and/or associated circuitry, Ford voluntarily recalled approximately 4,297,461 additional Ford Vehicles.

81. The September 2005 recall consisted of adding a fuse to the circuit and, as part of this recall, Defendant Ford instructed owners to take their Ford Vehicles to a dealership where the cruise control function would be disabled to avoid fires. This recall affected the following vehicles (hereinafter collectively referred to as the "Third Recall Ford Vehicles"):

    a. Model Years 1994 through 1999 and 2001 and 2002 Ford F-150 and F-150 LD Pick-Ups;

    b. Model Years 1997 through 1999 and 2001 and 2002 Ford Expeditions;

    c. Model Years 1998 through 1999 and 2001 and 2002 Lincoln Navigators;

    d. Model Year 2002 Lincoln Blackwoods; and

    e. Model Years 1994 through 1996 Ford Broncos.

82. In September of 2005, Third Recall Ford Vehicle owners received a letter from Ford, advising them to have an interim repair performed until parts became available in November of 2005.

83.    In November 2005, Third Recall Ford Vehicle owners were advised that the parts for the permanent repair would not be available until February of 2006 and that they should contact Ford in February to schedule an appointment for repair.

84.    As of June 30, 2006, 2.7 million Third Recall Ford Vehicles still contained the defective SCD Switch and/or associated circuitry.

85.    As of June 30, 2006, over 3 million Second and Third Recall Ford Vehicles still contain the defective SCD Switch, posing a significant fire risk not only to the Ford Vehicles, but also the garages and houses in which the Ford Vehicles are parked.

**E.    THE FOURTH RECALL, AUGUST 2006**

86.    On August 3, 2006, because of the aforesaid fire problems associated with the SCD Switch and/or associated circuitry, Ford voluntarily recalled approximately 1.2 million additional Ford Vehicles.  This recall consisted of adding a fused wiring harness into the speed control system, and, as part of this recall, Ford is instructed owners to take their Ford Vehicles to a dealership where the fused wiring harness would be installed.  The fused wiring harness cuts off the electrical current to the switch in case there is increased power due to the leaking switch. This recall affects the following vehicles (hereinafter collectively referred to as the "Fourth Recall Ford Vehicles"):

       a.    Model Years 1996 through 2002 Ford E-450s;

       b.    Model Years 1994 through 1996 Ford Econolines;

       c.    Model Years 2000 through 2002 Ford Excursions;

       d.    Model Year 1998 Ford Explorers;

       e.    Model Years 1994 through 2002 Ford F-250s;

       f.    Model Years 1994 through 2002 Ford F-350s;

       g.    Model Years 1994 through 2002 Ford F-450s;

       h.    Model Years 1994 through 2002 Ford F-550s; and

       i.    Model Year 1998 Mercury Mountaineers.

**F.    THE FIFTH RECALL, MARCH 2007**

87.    On March 5, 2007, because of the aforesaid fire problems associated with the SCD Switch and/or associated circuitry, Ford voluntarily recalled approximately 155,000 additional Ford Vehicles.  As with the Fourth Recall of Ford Vehicles, this recall also consisted of instructing owners to take their Ford Vehicles to a dealership for the installation of a fused wiring harness which cuts off the electrical current to the switch in case there is increased power. This recall affects the following vehicles (hereinafter collectively referred to as the "Fifth Recall Ford Vehicles"):

    a.    Model Year 2003 Ford Excursions;

    b.    Model Year 2003 Ford Lincoln Blackwood pickups;

    c.    Model Year 2003 Ford F-150's;

    d.    Model Year 2003 Ford F-250's;

    e.    Model Year 2003 Ford F-350's;

    f.    Model Year 2003 Ford F-450's; and

    g.    Model Year 2003 Ford F-550's.

**G.    THE SIXTH RECALL, AUGUST 2007**

88.    On August 3, 2007, because of the aforesaid fire problems with the SCD Switch and/or associated circuitry, Ford voluntarily recalled approximately 3.6 million Ford Vehicles. As with the Fifth Recall Ford Vehicles, this recall also consisted of instructing owners to take their Ford Vehicles to a dealership for the installation of a fused wiring harness which cuts off the electrical current to the deactivation switch or replace the switch if it is found to be leaking. This recall affects the following vehicles (hereinafter referred to as the "Sixth Recall Ford Vehicles"):

    a.    Model Years 1998 2002 Ford Ranger;

    b.    Model Years 1992 1997 Lincoln Town Car;

    c.    Model Years 1992 1997 Ford Crown Victoria;

d. Model Years 1992 1997 Mercury Grand Marquis;

e. Model Years 1993 1998 Lincoln Mark VIII;

f. Model Years 1993 1995 Taurus SHO;

g. Model Years 1999 2001 Ford Explorer;

h. 1999 2001 Mercury Mountaineer;

i. 2001 2002 Ford Explorer Sport;

j. 2001 2002 Ford Explorer Sport Trac;

k. Model Years 1992 1993 E150 350 vans;

l. Model Years 1997 2002 E150 350 vans;

m. Model Years 1993 Ford F Series pickups;

n. Model Year 1993 Ford Bronco;

o. Model Year 1994 Mercury Capri;

p. Model Years 2003 2004 Ford F 150 Lightning;

q. Model Years 1995 2002 Ford F53 motor homes.

89.    Plaintiff Kiger owns one of the Sixth Recall Ford Vehicles, a Model Year 1999 Ford Explorer. She has been without use of her cruise control for several months as a result of Defendant Ford being unable to make a replacement SCD Switch available to her.

**H.    THE SEVENTH RECALL, JANUARY 2008**

90.    In late January, 2008, because of the aforesaid fire problems with the SCD Switch and/or associated circuitry, Ford recalled approximately 225,000 Ford Vehicles. Unlike prior recalls, the Seventh Recall was an additional recall of vehicles involved in prior recalls, specifically the First and Sixth Recalls, due to a flaw in the repair that was done. The original repair involved installation of a wiring harness around the cruise control switch, but Ford found that the harness failed to function properly. This recall affects the following vehicles:

a. 1992-2003 Econoline;

b. 1992-98 Crown Victoria/Grand Marquis;

ORICINAL CLAS ACTION COMPLAINT

c.   1993 Bronco;

d.   1995-97 F-series stripped chassis;

e.   1993-95 Taurus SHO;

f.   1992-95 Town Car; and

g.   1993 F series Model Years 1998 2002 Ford Ranger

**I.    FUTURE RECALLS**

91.    Plaintiffs anticipate that Ford will be pressured into recalling additional model year vehicles because, even after Ford expanded its recall multiple times, there are still unrecalled Ford model vehicles which are experiencing fires and which have SCD switches with the same or similar design found in recalled models.   Plaintiffs will seek to amend their pleadings accordingly.

**J.    DAMAGES SUFFERED BY LOSS-OF-USE PLAINTIFF**

92.    By Defendant Ford's own admission, it lacked an adequate supply of replacement parts for the defective SCD Switches to adequately repair, replace, or adjust the defect.

93.    Defendant Ford has repeatedly given its customers false promises regarding when replacement parts would become available.

94.    As a result of these false promises, Defendant Ford's customers who responded to a Ford recall and had their cruise control disconnected have been without the use of their cruise control for a period of time even longer than Defendant Ford had originally promised at the time their cruise control first disconnected.

95.    The Loss-of-Use Plaintiff and the putative Loss-of-Use Sub-Class Members were forced to drive their Ford Vehicles without the cruise control function for several months while waiting for Defendant Ford to obtain replacement parts.

96.    By forcing the Loss-of-Use Plaintiff and the putative Loss-of-Use Sub-Class Members to wait several months for the replacement of the defective SCD Switch, Defendant Ford failed to adequately repair, replace, or adjust the defect, resulting in the Loss-of-Use

1   Plaintiff and the putative Loss-of-Use Sub-Class Members suffering damages in the form of loss

2   of use of their cruise control.

3       97.    An MDL proceeding has been established to consolidate litigation regarding this

4   defect.  In that proceeding, Judge Friedman recognized the viability of Plaintiffs' loss-of-use

5   damage claim.  "The fact that Plaintiffs were without the use of their SCD Switch for a period of

6   time is undisputed. This deprivation of use forms the basis of the Loss of Use Plaintiffs' claims.

7   Such loss of use is a recognizable claim."  *In re Ford Motor Co. Speed Control Deactivation*

8   *Switch Products Liability Litigation*, 2007 WL 2421480, *4 (E.D. Mich. 2007) (emphasis

9   added).

10      98.    The Loss-of-Use Plaintiff and the putative Loss-of-Use Sub-Class Members have

11  been damaged and suffered monetary loss in one or more of the following ways or a combination

12  thereof:

13

14          a.  They paid for a Ford Vehicle that was to have a safe, non-defective, and
                operable cruise control system; however, their Ford Vehicle did not have
15              such a system due to the defective SCD Switch and/or associated circuitry;

16          b.  At Defendant Ford's instructions or out of their own safety concerns, the
                Loss-of-Use Plaintiff and the putative Loss-of-Use Sub-Class Members
17              disconnected the SCD Switch, thereby leaving their Ford Vehicle without
                a safe, non-defective, and operable cruise control system for which they
18              had paid;

19          c.  They have suffered or will suffer loss of use of their Ford Vehicle at the
                time the defective SCD Switch and/or associated circuitry is replaced or
20              modified at a dealership or other repair facility; and

21

22          d.  They have suffered or will suffer inconvenience and disruption of their
                work or activities at the time the defective SCD Switch and/or associated
23              circuitry is replaced or modified at a dealership or other repair facility.

24      99.    The fact that the Loss-of-Use Plaintiff and the Loss-of-Use Sub-Class Members

25  were without use of their SCD Switch for a period of time is undisputed.  This deprivation of use

26  forms the basis of the Loss-of-Use Plaintiff's and putative Loss-of Use Sub-Class Members'

27  claims.  Such loss is a recognizable claim.

28

ORICINAL CLAS ACTION COMPLAINT

Page - 16 -

**K.    DAMAGES SUFFERED BY INCIDENT PLAINTIFFS**

100.    Incident Plaintiffs and the putative Incident Sub-Class Members have suffered damages including, but not limited to, damage or destruction of their Ford Vehicles and the resulting loss of use thereof, damage or destruction to other property and the resulting loss of use thereof, inconvenience, and disruption of life resulting therefrom, and, in some cases, psychological or physical injuries or death.

**L.    LIMITATIONS**

101.    Any applicable statutes of limitations have been tolled or have not run, or, alternatively, Defendant Ford is estopped from asserting said defenses for one or more of the following reasons or a combination thereof:

    a.    Defendant Ford knowingly and actively concealed, and falsely denied, the defects in the Ford Vehicles from the Plaintiffs, the putative Class Members, and the general public until NHTSA pressured Ford to recall them.

    b.    Plaintiffs, the putative Class Members, and the general public were not at fault for failing to discover that the SCD Switch and/or associated circuitry was defective and unsafe before they received notice from Ford. Nor are Plaintiffs, the putative Class Members, and the general public at fault for failing to earlier discover that the First Recall did not correct the problem.

    c.    Plaintiffs, the putative Class Members, and the general public could not reasonably have discovered Defendant Ford's material omissions until they received notice from Ford. Therefore, their claims accrued on that date and/or any statute of limitations was tolled until that date.

    d.    Ford was and is under a continuing duty to disclose the nature of the SCD Switch and/or associated circuitry defect(s) to Plaintiffs, the putative Class Members, and the general public.

    e.    It is unconscionable to enforce any such statute because, inter alia, Ford knew of and failed to disclose the inherent defect in the SCD Switch and/or associated circuitry.

## M.    PREEMPTION

102.    The Plaintiffs' state law claims herein are not preempted by federal law for several reasons, including there were no mandatory safety standards or regulations adopted and promulgated by the federal government or an agency of the federal government that were applicable to the design of the SCD Switch and/or associated circuitry or the design of its incorporation into the Ford Vehicles at the time of their respective manufacture, which governed the product risk that caused Plaintiffs' harm.

103.    Alternatively, as to safety standards and regulations,

    a.  If there were applicable safety standards or regulations, Defendant Ford's design failed to comply with same;

    b.  If there were such applicable safety standards or regulations that Defendant Ford's design complied with:

        i.  Such safety standards or regulations were inadequate to protect the public from unreasonable risks of injury or damage;

        ii.  Ford, before or after marketing the Ford Vehicles, withheld from or misrepresented to the federal government or an agency thereof information or material relevant to the federal government's or agency's determination of the adequacy of any such safety standards or regulations; or

        iii.  Before or after the marketing of the Ford Vehicles, Ford knew that even if the vehicles complied with an applicable safety standard or regulation, the SCD Switch and/or associated circuitry was defective and unsafe thereby creating a fire hazard as set forth herein.

104.    Finally, Judge Friedman ruled in the MDL proceeding in this case that these claims are not preempted. *In re Ford Motor Co. Speed Control Deactivation Switch Products Liability Litigation*, 2007 WL 2421480, *4-5 (E.D. Mich. 2007) (emphasis added).

**N.    NOTICE**

105.    Ford (a) has waived, or otherwise is not entitled to, a notice of defect and/or (b) has received adequate notice under the Uniform Commercial Code and/or consumer fraud statutes for one or more of the following reasons or a combination thereof:

> a.    Ford has been given actual notice of the defect by Plaintiffs; Ford had actual knowledge of the specific defects in the SCD Switch and/or associated circuitry and the safety problems resulting therefrom and thereafter has failed or refused to remedy the defect(s) as to the and the "Incident Sub-Class";
>
> b.    Prior to the fires involving the "Incident Sub-Class", Ford had actual knowledge of the specific defects in the SCD Switch and/or associated circuitry and the safety problems resulting therefrom and failed or refused to remedy the defect(s); and
>
> c.    The filing of numerous suits and assertion of numerous claims involving fires in Ford Vehicles with the SCD Switch and/or associated circuitry constituted notice to Ford of the specific defects and safety problems associated with the SCD Switch and/or associated circuitry.

**VI.    CLASS ACTION ALLEGATIONS**

106.    Pursuant to Fed.R.Civ.P. 23, Plaintiffs bring this action for themselves and on behalf of the following general classes certified on a national basis consisting of all entities and natural persons residing in the State of California, the law of which allows the bringing of the claim(s) asserted with the general classes defined as follows or as the Court may otherwise define:

> a.    All original purchasers of a vehicle defined herein as a "Ford Vehicle";
>
> b.    All present or past owners of a Ford Vehicle; and
>
> c.    All present or past lessees of a Ford Vehicle.

107.    With the general classes to consist of damages sub-classes defined as follows or as the Court may otherwise define:

> a.    The "Loss of Use Sub-Class" is defined as all members of a certified general class who lost the use of their Ford Vehicle's cruise control while it

was disconnected awaiting repair or replacement of the SCD Switch and/or associated circuitry.

b. The "Incident Sub-Class" is defined as all members of a certified general class who suffered personal or property damage as a result of a fire caused by the SCD Switch and/or associated circuitry for the purpose of determining Defendant Ford's liability with determination of damages to be thereafter individually determined.

108. The requirements of Rule 23(a)(1) are met as it is not practical to join all of the putative Class Members for the following reasons: over 250,000 Ford Vehicles were recalled in the First Recall, over 700,000 Ford Vehicles were recalled in the Second Recall, over 3,700,000 Ford Vehicles were recalled in the Third Recall, approximately 1.2 million Ford Vehicles were recalled in the Fourth Recall, approximately 155,000 Ford Vehicles were recalled in the Fifth Recall, and approximately 3.6 million Ford Vehicles were recalled in the Sixth Recall. To Plaintiffs' knowledge, information, and belief, the number of fires caused by the SCD Switch and/or associated circuitry is in the hundreds, if not greater. A significant percentage of these Ford Vehicle owners and lessees reside in California. Furthermore, the putative Class Members are disbursed geographically throughout the State of California. Given these circumstances, it is not practical to join all of the putative Class Members. Accordingly, the requirements of Rule 23(a)(1) are met.

109. The requirements of Rule 23(a)(2) are met in that the claims of Plaintiffs and the putative Class Members involve common questions of fact and law, including but not limited to:

a. Whether the Ford Vehicles were sold with SCD Switches and/or associated circuitry that were defectively designed or manufactured;

b. Whether the SCD Switches and/or associated circuitry in the Ford Vehicles are defective in that they can cause vehicle fires;

c. As to the California consumer protection counts, whether Defendant Ford's conduct as to the SCD Switch and/or associated circuitry constituted a breach of the state Unfair Competition Law and the Consumer Legal Remedies Act.

ORICINAL CLAS ACTION COMPLAINT

Page - 20 -

    d. As to the Equitable Restitution/Unjust Enrichment count, whether Defendant Ford retained benefits conferred by Plaintiffs and the putative Class Members under circumstances which make Defendant Ford's retention of these benefits unjust and inequitable.

    e. Whether Defendant Ford was unjustly enriched by obtaining revenues from the sale of Ford Vehicles which Defendant Ford knew contained defective components;

    f. Whether Plaintiffs and the putative Class Members are entitled to recover compensatory damages, restitution damages, exemplary damages, and statutory damage multiples;

    g. Whether Plaintiffs and the putative Class Members who had their cruise control disabled were damaged by being deprived of the cruise control function of their vehicles while waiting for installation of a redesigned SCD Switch and/or associated circuitry; and

    h. Whether Plaintiffs and the putative Class Members are entitled to reasonable and necessary attorney's fees, pre-judgment interest, post-judgment interest, and costs of suit.

110. This Complaint includes one or more putative class representatives with claims that are typical of each Class Member. Accordingly, the requirements of Rule 23(a)(3) are met.

111. Plaintiffs will fairly and adequately protect the interests of each sub-class. Plaintiffs are members of the sub-classes they seek to represent. Their interests coincide with, and are not antagonistic to, the interests of the other members of their respective classes and they have retained counsel experienced and competent in complex, commercial, multi-party, mass tort, personal injury, products liability, consumer, and class action litigation. Accordingly the requirements of Rule 23(a)(4) have been met.

112. The requirements of Rule 23(b)(3) are met in that, among other things:

    a. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation may make it difficult, if not impossible, for all members of the

ORIGINAL CLAS ACTION COMPLAINT

class to address the wrongs done to them individually. There will be no unusual difficulty in the management of this action as a class action.

    b.   Questions of law and fact common to the putative Class Members predominate over questions affecting only individual Members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.

    c.   A substantial majority of the putative Class Members can be identified through public records and Defendant Ford's records as to initial owners and warranty claims.

    d.   The cost to pursue an individual claim would be prohibitive and individual claims would create an undue burden on the court system.

    e.   Class Members with substantial claims can opt out if they so desire.

113.    In addition to and in the alternative to the preceding paragraph, the requirements of Rule 23(b)(2) are met in that, as set forth in this Complaint, Defendant Ford has acted or refused to act on grounds generally applicable to the class thereby making appropriate final injunctive relief or declaratory relief with respect to the class as a whole.

## VII.   CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**(Violation of Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, et seq.)**

114.    Loss-of-Use Plaintiff and the putative Loss-of-Use Sub-Class Members incorporate each and every preceding paragraph stated above, inclusive, as though the same were fully set forth hereafter.

115.    The UCL prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue, or misleading advertising" as that term is used in Business and Professions Code § 17500.

116.    In violating the California Consumer Legal Remedies Act, as alleged below as the Second Cause of Action and incorporated herein, Defendant Ford engaged in unlawful business practices in violation of the UCL.

117.    Defendant Ford engaged in unfair business practices in violation of the UCL through its practice of selling vehicles with an inherently dangerous SCD Switch located in a circuit that is always energized with electricity.

118.    Defendant Ford further engaged in unfair business practices in that it knowingly and actively concealed and falsely denied the defects in its vehicles from the Plaintiff, the putative Class Members, and the general public until NHTSA pressured Defendant Ford to recall them.

119.    Defendant Ford continues to engage in unlawful, unfair, and deceptive practices in violation of the UCL.  The seven independent and successive recall notices highlight Defendant Ford's active concealment of the defective SCD Switch and/or associated circuitry.

120.    As a proximate result of its unlawful, unfair, or fraudulent practices, Defendant Ford has been unjustly enriched and should be required to (a) make restitution to the Plaintiffs and the putative Class members pursuant to Sections 17203 and 17204 of the UCL, and/or (b) disgorge any profits unjustly earned, and/or (c) provide other appropriate equitable relief.

## SECOND CAUSE OF ACTION
### (Violation of Consumer Legal Remedies Act, Civil Code §§ 1750, et seq.)

121.    Loss-of-Use Plaintiff and the putative Loss-of-Use Sub-Class Members incorporate each and every preceding paragraph stated above, inclusive, as though the same were fully set forth hereafter.

122.    Defendant Ford Motor Company is a "person" as defined by Cal. Civil Code section 1761 (c).

123.    Loss-of-Use Plaintiff and the putative Loss-of-Use Sub-Class Members are "consumers" as that term is defined Cal. Civil Code section 1761(d).

ORICINAL CLAS ACTION COMPLAINT

124.    Through its own actions, and those of its employees, agents and servants, Defendant Ford engaged in unlawful conduct in violation of the CLRA by engaging in the following activities, while actively concealing and failing to disclose the material information in its possession regarding the SCD Switch's characteristics:

    a.    Representing that the vehicles at issue have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not actually have, in violation of §1770(a)(5);

    b.    Representing that the vehicles at issue are of a particular standard, quality, or grade, or of a particular style or model, if they are of another, in violation of §1770(a)(7); and

    c.    Advertising the vehicles at issue with intent not to sell them as advertised, in violation of §1770(a)(9)).

125.    By engaging in the foregoing conduct, Defendant Ford actively concealed and failed to disclose material facts about the SCD Switch and its initial design flaws. The information concealed and omitted by Defendant Ford was material, in that reasonable consumers would have considered it important in making their purchase or lease decisions, and could not make fully informed decisions because of the concealment and omission of these material facts. Therefore, Loss-of-Use Plaintiff and the putative Loss-of-Use Sub-Class Members reasonably relied on the concealment by and omissions of Defendant Ford, and, as a proximate result, leased, and/or purchased the automobiles at issue, and did so at a higher premium than they otherwise would have had the truth been known.

126.    The Loss-of-Use Plaintiff and all putative Loss-of-Use Sub-Class Members, as a result of Defendant Ford's uniform and active concealment of material information regarding the vehicles, have suffered a loss in value of their vehicles.

127.    Loss-of-Use Plaintiff and the putative Loss-of-Use Sub-Class Members seek restitution in the full amount of the overcharge paid for their vehicles, and/or disgorgement of

Defendant Ford's profits reasonably attributable to its unjust enrichment as a result of the misconduct alleged herein, and/or any other relief which the court deems proper.

128.    Loss-of-Use Plaintiff and the putative Loss-of-Use Sub-Class Members further intend to seek compensatory damages and, in light of Defendant Ford's willful and conscious disregard for the rights and safety of the Loss-of-Use Plaintiffs, the putative Loss-of-Use Sub-Class Members, and the public, and Defendant Ford's intentional and fraudulent concealment of material facts, Loss-of-Use Sub-Plaintiffs and the putative Loss-of-Use Sub-Class Members also intend to seek an award of punitive damages. Pursuant to Civil Code section 1782 (a), Plaintiffs will serve Defendant Ford with notice of its alleged violations of the CLRA by certified mail, return receipt requested. If, within 30 days after the date of such notification, Defendant Ford fails to provide appropriate relief for its violation of the CLRA, Plaintiffs will amend this Complaint to seek monetary (both compensatory and punitive) damages under the CLRA. Notwithstanding any other statements in this Complaint, Plaintiffs specifically do not seek monetary damages in conjunction with their CLRA claims, and will not do so, until this 30-day period has passed.

### THIRD CAUSE OF ACTION
**(Equitable Restitution/Unjust Enrichment)**

129.    Loss-of-Use Plaintiff and the putative Loss-of-Use Sub-Class Members incorporate each and every preceding paragraph stated above, inclusive, as though the same were fully set forth hereafter.

130.    During the Class Period, Defendant Ford manufactured and sold the vehicles at issue with a defective SCD Switch.

131.    Defendant Ford had actual knowledge of the specific defects in the SCD Switch and/or associated circuitry, and the safety problems resulting therefrom, at least as early as 1999, as evidenced by the First Recall.

132.    Despite having actual knowledge of this defect, Defendant Ford failed to disclose the existence of such defect (a material fact) to Loss-of-Use Plaintiff and the putative Loss-of-Use Sub-Class Members at the times each of them purchased their vehicles.

133.    During the Class Period, Loss-of-Use Plaintiff and the putative Loss-of-Use Sub-Class Members, without knowledge of the design defect, conferred upon Defendant Ford payment for their vehicles which included payment for a functioning cruise control system.

134.    Defendant Ford accepted or retained the benefits conferred by Loss-of-Use Plaintiff and the putative Loss-of-Use Sub-Class Members, including payment for a functioning cruise control system, despite Defendant Ford's knowledge of the design defect.

135.    Retaining the non-gratuitous benefits conferred upon Defendant Ford by Loss-of-Use Plaintiff and the putative Loss-of-Use Sub-Class Members under these circumstances makes Defendant Ford's retention of the full amount of payments unjust and inequitable.

136.    Because Defendant Ford's retention of the full amount of the non-gratuitous benefits conferred by Loss-of-Use Sub-Plaintiffs and the putative Loss-of-Use Sub-Class Members is unjust and inequitable, Defendant Ford is liable for the payment of restitution of a portion of the benefits it has retained.

**FOURTH CAUSE OF ACTION**
**(Strict Liability for Unreasonably Dangerous Vehicles)**

137.    Incident Plaintiffs and the putative Incident Sub-Class Members incorporate each and every preceding paragraph stated above, inclusive, as though the same were fully set forth hereafter.

138.    Defendant Ford manufactured, distributed and sold the Ford Vehicles.

139.    At the time Incident Plaintiffs and the putative Incident Sub-Class Members drove the Ford Vehicles they were in substantially the same condition as when they left Defendant Ford's possession. Alternatively, any changes made to the Ford Vehicles were reasonably foreseeable to Defendant Ford.

ORICINAL CLAS ACTION COMPLAINT

140.    The Ford Vehicles were used or misused in a way that was reasonably foreseeable to Defendant Ford.

141.    The design of the Ford Vehicles was a substantial factor in causing harm to Incident Plaintiffs and the putative Incident Sub-Class Members.

142.    For the reasons set forth above, the Defendant Ford Vehicles are unreasonably dangerous for their intended or reasonably foreseeable use in that:

   a.  They are unreasonably dangerous under the risk-benefit test as a result of one or more or a combination of the unsafe and defective conditions as set forth above.

   b.  They are dangerous to an extent beyond that which would be contemplated by the ordinary consumer with ordinary knowledge to the community that:

      i.  An ordinary user would not contemplate that their Ford Vehicle was designed in such a manner that the SCD Switch and/or associated circuitry had the capacity to ignite a fire;

      ii.  An ordinary user would not contemplate that even when the Ford Vehicle's ignition was off there would be components that were electrically charged that could ignite a fire; and

      iii.  An ordinary user would not contemplate that a Ford Vehicle would be designed without a fuse or other safety device to prevent a fire in the event of a component failure.

143.    When the Ford Vehicles containing the SCD Switch and/or associated circuitry are in a condition that is intended or reasonably foreseeable and are used in a manner that is intended or reasonably foreseeable, they can nevertheless catch fire as a result of a failure of the SCD Switch and associated circuitry.

144.    The unreasonably dangerous condition of the SCD Switch and/or associated circuitry described above caused, or was a substantial factor in causing harm to Incident Plaintiffs and the putative Incident Sub-Class Members.

ORICINAL CLAS ACTION COMPLAINT

## FIFTH CAUSE OF ACTION
### (Negligence)

145.   Incident Plaintiffs and the putative Incident Sub-Class Members incorporate each and every preceding paragraph stated above, inclusive, as though the same were fully set forth hereafter.

146.   Defendant Ford owed Incident Sub-Plaintiffs and the putative Incident Sub-Class Members a duty to exercise ordinary care in designing, manufacturing, marketing, and selling the Ford Vehicles in question.

147.   Defendant Ford failed to exercise ordinary care in the design, manufacture, marketing, and selling of the Ford Vehicles in question, did that which a reasonably prudent automobile manufacturer would not have done in the same or similar circumstances, failed to do that which a reasonably prudent automobile manufacturer would have done in the same or similar circumstances, and was negligent in one or more of the following courses of conduct:

    a.   In designing the cruise control deactivation switch such that it received continual power;

    b.   In designing the cruise control deactivation switch such that it received far more power than was necessary for the switch to properly function;

    c.   In designing the cruise control deactivation switch so that it was in close proximity to the master cylinder brake fluid container;

    d.   In designing Ford Vehicles such that the master cylinder brake fluid container was made out of a substance that could not withstand the heat generated by the cruise control deactivation switch;

    e.   In failing to design Ford Vehicles so that the cruise control deactivation switch would deactivate if it reached a heat or resistance that could cause a fire, such as a fuse that would blow at such point, or some other method; and

    f.   Failing to inform the Incident Plaintiffs, the putative Incident Sub-Class Members, and the public of this aforesaid risk of fire in a reasonable time and manner.

ORICINAL CLAS ACTION COMPLAINT

148.    The Incident Plaintiffs and the putative Incident Sub-Class Members were damaged as a result of these negligent acts and/or omissions on the part of Defendant Ford as set forth above.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the putative Class Members pray for relief as follows:

a.    These claims be preliminarily certified and Plaintiffs be appointed class representatives for the purpose of giving notice of consumer fraud claims and warranty claims to Defendant Ford;

b.    These claims be certified for class treatment;

c.    Plaintiffs be appointed class representatives;

d.    Plaintiffs' counsel herein be appointed Class Counsel;

e.    The Loss-of-Use Plaintiff and the members of the "Loss of Use Sub-Class" be awarded monetary damages for:

  i.    the loss of use of the cruise control system in their Ford Vehicles during the period it was, or will be, inoperative;

  ii.    the excessive price paid for the Ford Vehicles due to the fact that the Ford Vehicles had a defective and unsafe cruise control system;

  iii.    the excessive revenues unjustly obtained by Defendant Ford attributable to the cruise control function of their Ford Vehicles;

  iv.    the loss of use of their Ford Vehicles at the time these vehicles were, or are, repaired; and

  v.    the resulting inconvenience and disruption suffered in having the repairs made.

f.    The Incident Plaintiffs and the members of the "Incident Sub-Class" be awarded monetary damages for:

  i.    the damage or destruction of their Ford Vehicles and other property;

ORIGINAL CLAS ACTION COMPLAINT

ii.  the inconvenience and disruption of their work and activities resulting from the fire;

iii.  the mental anguish suffered; and

iv.  the personal injury suffered.

g.  Separate trials be ordered for the members of the "Incident Sub-Class" as to their individual damages;

h.  Punitive damages be assessed against Defendant;

i.  The Plaintiffs and the putative Class be awarded such other and further relief as may be appropriate;

j.  The Plaintiffs demand a jury trial on their behalf and on behalf of the Class; and

k.  Plaintiffs be awarded their costs of suit.

Respectfully submitted:

Cory Fein (State Bar No. 250758)
Michael A. Caddell (State Bar No. 249469)
Cynthia B. Chapman (State Bar No. 164471)
Caddell & Chapman
1331 Lamar, Suite 1070
Houston TX 77010-3027
713.751.0400 (telephone)
713.751.0906 (facsimile)

ATTORNEY-IN-CHARGE FOR
PLAINTIFF NANCY KIGER AND THE
PUTATIVE LOSS-OF-USE SUBCLASS

ORICINAL CLAS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Michael J. Flannery (State Bar No. 196266)
John J. Carey
Tiffany J. Marko
Carey & Danis, L.L.C.
8235 Forsyth Blvd. Suite 1100
St. Louis, MO 63105
Tel. (800) 721 2519
Fax. (314) 721 0905

and

Jeffrey J. Lowe
The Lowe Law Firm
8235 Forsyth Blvd. Suite 1100
St. Louis, Missouri  63105-1623
Telephone: (877) 678-3400
Facsimile: (314) 678-3400

ATTORNEYS-IN-CHARGE FOR
PLAINTIFFS ROBERTO O. LOZANO,
DANIEL GERARD, RAMÓN
RODRIGUEZ, QU PING, AND THE
PUTATIVE INCIDENT SUBCLASS

ORICINAL CLAS ACTION COMPLAINT

Page - 31 -